■ CHARLES J. CAREY, Appellant, v ROBERT McGUIRE, as Police Commissioner of City of New York, et al., Respondents. — Appeal from order, Supreme Court, New York County (Fraiman, J.), entered July 24, 1981 which dismissed petitioner's petition seeking an accident disability pension, and granted petitioner an ordinary disability pension, unanimously dismissed as superseded, without costs. Order, Supreme Court, New York County (Fraiman, J.), entered October 14, 1981 which denied petitioner's motion for renewal, unanimously reversed, on the law and the facts, without costs, and the motion granted to the extent of vacating the order of July 24, 1981, and granting the petition to annul the determination of respondent denying petitioner an accident disability pension and remanding for further proceedings. Petitioner, appointed a police officer on February 9, 1968, was involved in an arrest on March 17, 1977 during which he fell to the sidewalk, on his right knee. He was removed to Lenox Hill Hospital where the injury was diagnosed as a sprained knee with evidence of blood clot. It is undisputed that the injury occurred in the line of duty and was so reported. On March 21, 1977 petitioner was examined by the district police surgeon, who verified the injuries sustained, indicating a contusion of the right knee. Subsequent visits were made to the district police surgeon on March 28, April 4 and April 14, 1977. The recommended treatment was rest and soaking. On April 22, 1977 the surgeon advised that an X ray be taken. Additional examinations on April 29 and May 3, 1977 indicated a continuing course of treatment. On May 10, petitioner's knee was X-rayed and found by the examining physician to be "normal". Nonetheless, on May 13, the surgeon advised that petitioner be assigned to limited duty. The final report of the surgeon, dated May 16, 1977, advised that petitioner was fit to resume work as of that date. Commencing on June 28 and through November, 1977, petitioner was treated for unrelated "pains in the chest" and a back problem. Throughout December, 1977 and up to February 13, 1978, petitioner visited the police surgeon who, on February 13, noted the recurrent back pain and the contusion of petitioner's knee. Again, on March 20, the doctor concluded that petitioner was still suffering from a rib injury as well as the contusion of the right knee. In August, 1978, the doctor noted the continued back and knee pain. During that month an interview was directed to determine whether the officer was seriously ill or just malingering, in view of his chronic absences. On September 11, 1978 petitioner was re-examined and found to have the possibility of a herniated disc. It was also reported: "There is full flexion and extension of the right knee with tenderness over the lateral meniscus. Pain is also present on manipulation." The doctor recommended an arthrogram of the right knee, continued petitioner on restricted duty and prescribed Darvon for the pain. On September 26, the doctor advised heat, rest and soaking for petitioner's pain in the back and the knee. On October 11, 1978 petitioner underwent an arthrogram conducted by a police physician who reported "an incomplete tear of the floor of the [medial] meniscus." His impression was that there were "adhesions involving the inferior surface of the posterior horn of the medial meniscus with a suspected incomplete tear." An arthroscopy was recommended based upon the "conclusive findings on arthrogram." Throughout November and December there were repeated complaints and sick leave and examinations in part related to the knee injury. On December 27, 1978 the Medical Board Police Pension Fund, Article II, advised the board of trustees "[in] view of the absence of any physical findings, as well as the normal EMGs and normal x-rays * * * sufficient evidence does not exist to declare the officer disabled." The medical board recommended disapproval of petitioner's application for a disability pension. Further complaints and examinations continued through January and up until March 23, 1979. On April 27, the doctor

recommended that petitioner be continued on restricted duty and that there be an arthroscopy to fully assess the knee damage. On May 16, 1979 petitioner suffered a broken right ankle in a non-line-of-duty injury. The doctor noted the positive prior arthrogram and found current tenderness. On August 10, 1979 petitioner underwent an arthroscopy. The doctor concluded "a small tear was noted in the posterior horn * * * There was no other pathology noted here." In September, 1979, petitioner once again sought an accident disability pension due to line-of-duty knee injury sustained on March 17, 1977. On October 18, 1979 the medical board determined that "The above findings do substantiate disability in the right knee * * * Based upon a review of the medical record, the officer sustained a contusion of the right knee, *and there was no medical treatment for approximately one year after the injury* according to the officer. It is, therefore, the recommendation of the Medical Board that the officer's own application for accident disability retirement be disapproved, and approved on the Police Commissioner's application for ordinary disability retirement, with a diagnosis of internal derangement of the right knee and tear of the medial meniscus." (Emphasis supplied.) Plainly the board concluded there was a one-year hiatus between the injuries sustained and treatment therefor, which could not support an accident disability determination but only ordinary disability retirement. On May 8, 1980, on re-examination by the board, the board ruled "[t]he available record once again does not substantiate continuing disability in the right knee subsequent to the March 1977 injury for approximately one year." The trustees approved the recommendation of the medical board. In this proceeding brought by petitioner to vacate and annul the determination of the trustees upon the ground that its determination was arbitrary and capricious, the answer of respondents states: "Based on petitioner's medical records and his own statement that he had not sought medical treatment for his knee for approximately a year after incurring the injury, the * * * Medical Board * * * recommended * * * that he be denied accident disability retirement." Special Term, in dismissing the petition, concluded that "The Medical Board based its finding that petitioner's disability was not causally related to the March, 1977 injury on the fact that petitioner did not complain about or seek medical treatment for his knee for more than a year after the injury." Special Term concluded that the one-year delay supported the noncausal relationship finding with respect to the line-of-duty accident on March 17, 1977. Petitioner's application for renewal noted that attendance upon him by police department physicians and the district surgeon, subsequent to the March 17, 1977 line-of-duty injury, demonstrated the knee injury was causally related. A review of the medical record reveals petitioner's numerous ailments and unrelated disabilities, including obesity. However, it is plain that the conclusion of the medical board, the board of trustees and Special Term that there was a one-year hiatus between the disability of the right knee and the line-of-duty injury to the knee ignores the medical record compiled by respondents. The board's own record shows: (1) The line-of-duty injury occurred on March 17, 1977; (2) The police surgeon verified the contusion and blood clot on March 21, 1977 and subsequently examined and treated the petitioner on March 28 and April 4, 1977; (3) On April 14, 1977 the police surgeon advised continued rest and soaking of the knee; (4) On April 22, 1977 an X ray was advised and treatment and limited duty were continued until May 10, 1977 when the X ray was taken. Even though the original finding thereon was normal, petitioner was assigned to limited duty upon the advice of the police surgeon on May 17, 1977. Although petitioner was subsequently treated for unrelated pains and a prior unrelated injury, the recurring pain as a result of the contusion of petitioner's right knee was recorded on February

13, 1978, and again on March 20, 1978. Thus, the determination of the medical board, the trustees and the court that petitioner had not complained about or sought treatment for his knee injury for approximately one year after incurring the injury, is plainly erroneous. The record is to the contrary. The trustees are privileged to accept the medical reports of their own experts over those of a claimant (*Matter of Schweitzer v Codd*, 63 AD2d 66; *Matter of Fiore v Board of Educ.*, 48 AD2d 850, affd 39 NY2d 1016). However, the reports relied on here, which were solely those of respondents' agents, demonstrate that petitioner had not ignored the injury for approximately a year after the accident. There were complaints and there was treatment. Although the trustees may accept the findings of the medical board, they are mandated to examine all of the evidence and to make an independent determination of the issues based upon that evidence (*Matter of Brady v City of New York*, 22 NY2d 601). It is plain that the trustees did not undertake an examination of the available medical record. Apparently neither did the medical board. The determination is without foundation and disregards the record (*Matter of Pell v Board of Educ.*, 34 NY2d 222, 231). The determination appealed from was arbitrary and capricious insofar as it was founded upon erroneous statements of fact and conclusions contrary to respondents' own records. The proceeding should be remanded to the medical board for a new determination by the board upon which the trustees may rely in determining whether "these facts could or could not have caused the disability" (*Matter of Bennett v Board of Trustees of Police Pension Fund of City of N. Y., Art. II*, 20 AD2d 522, 523, affd 16 NY2d 562). Concur — Sullivan, J. P., Ross, Markewich, Fein and Asch, JJ.